UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**STEPHANIE SIMMONS,**

        Plaintiff,

vs.

**CARMELA FOODS, INC.,** and
**CARMELA FOODS DISTRIBUTION, INC.,**
Jointly and severally,

        Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **STEPHANIE SIMMONS**, for her Complaint against Defendants Carmela Foods, Inc. and Carmela Foods Distribution, Inc., stating the following:

## INTRODUCTION

1. Plaintiff Stephanie Simmons was tossed aside by her employer immediately after exhibiting symptoms related to Covid-19 and being instructed by a medical professional that she needed to self-quarantine until at least 72 hours after those symptoms cease. Defendants prodded Plaintiff to return to work claiming it was probably just the flu. Plaintiff returned to work 72 hours after her symptoms ceased, as instructed by medical professionals, and was terminated that day. Defendants claimed her termination was due to an "uncertain economy", however, they also stated that "business was booming" and they needed "all hands on deck" on a company-wide conference call only hours earlier.

Within this complaint, Plaintiff alleges that she was terminated in violation of her rights afforded under the FFCRA, FMLA and in violation of public policy.

## PARTIES

2. Plaintiff Stephanie Simmons is an individual who resides in Macomb County, Michigan.

3. Defendant Carmela Foods, Inc. is a domestic profit corporation located in Pontiac, Michigan, Oakland County. Carmela Foods, Inc.'s registered business address is 20 S. Telegraph Rd. Pontiac, MI 48053.

4. Defendant Carmela Foods Distribution, Inc. is a domestic profit corporation located in Fraser, Michigan, Macomb County. Carmela Foods Distribution, Inc.'s registered business address is 18350 15 Mile Rd. Fraser, MI 48026.

5. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## JURISDICITON AND VENUE

6. This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised Federal Claims under the Family Medical Leave Act of 1993 and the Families First Coronavirus Response Act, Pub.L. No. 116-127, 134 Stat. 178 (2020).

7. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

8. Plaintiff Stephanie Simmons ("Plaintiff") began her employment as a Assistant Protein Specialist with Defendants Carmela Food, Inc. and Carmela Foods Distribution, Inc. (collectively "Defendants" or "Carmela Foods") in February 2019.

9. Carmela Foods is a full-service regional specialty food, estate wine, prime meat and premium seafood distributor that distributes to specialty food retailers, restaurants, country clubs, hotels, resorts and wine establishments throughout the entire state of Michigan and Northern Ohio.

10. Carmela Foods, Inc. and Carmela Foods Distribution, Inc. have less than 500 employees individually and collectively.

11. Plaintiff's position, Assistant Protein Specialist, generally involves coming into Carmela Foods Fraser location to check inventory and contact clients then heading out to visit various clients making sales calls. fielding calls from Defendants drivers who are experiencing issues on the road.  These inquires come in the form of phone calls and the duties can be performed through telecommuting.

12. Plaintiff was a valued employee without receiving any notable discipline during her time employed by Carmela Foods.

Factual Background of the Covid-19 Pandemic and Associated Legal Protections

13. Around early March 2020, America began seeing multiple cases of the novel coronavirus ("COVID-19"). Covid-19 is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. Older adults and those with chronic health conditions are at particular risk, and there is an increased risk of rapid spread of COVID-19 among persons in close proximity to one another. There is currently no approved vaccine or antiviral treatment for this disease.

14. On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, Michigan's Governor Whitmer issued *Executive Order 2020-4*

declaring a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

15. On March 18, 2020, President Donald Trump signed the Families First Coronavirus Response Act ("FFCRA") into law. As part of the FFCRA, our government also passed the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA")

16. Specifically, the EFMLEA amends the Family Medical Leave Act ("FMLA") by adding another qualifying reason for leave and requiring pay for most of it. It provides up to 12 weeks of leave (two weeks unpaid and ten weeks paid) for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis." *See FFCRA, Division C, § 3102(b) (Pub. L. No. 116-127); 29 U.S.C. § 2612(a)(1)(F))*

17. Qualifying reasons include the period in which an employee is experiencing COVID-19 symptoms or has been exposed to someone exhibiting symptoms and seeking a medical diagnosis. *See 29 C.F.R. § 826.20*

18. The Department of Labor ("DOL") has ruled Covid-19 related symptoms as experiencing a fever, dry cough, shortness of breath, or shortness of breath; or other symptoms identified by the US Centers for Disease Control and Prevention (CDC).

19. An employee returning from FFCRA paid sick leave or family leave has the right to be restored to the same or an equivalent position under the FMLA. *See 29 C.F.R. § 826.30(a)*

20. The FFCRA expanded the FMLA to include employers with under 50 employees.

<u>Defendant's Unlawful Handling of Plaintiff upon Learning She was Symptomatic</u>

21. On or around March 17, 2020, Plaintiff contacted Defendants to notify them that she would be working from home as she had a significant fever and believed she had the Covid-19.

22. Plaintiff sought testing for Covid-19 at Beaumont Hospital however they were unable to provide her with a test. However, Beaumont instructed Plaintiff that she would not be able to return to the workplace until she was fever-free for at least 72 hours.

23. On March 19, 2020, after the enactment of the FFCRA, Plaintiff notified her supervisor Liam Ayers ("Ayers") through text message that she still had a temperature of over 101 degrees.

24. On Friday, March 20, 2020, Plaintiff was contacted by Carmela Foods Human Resources employee Lisa Horetski ("HR Horetski"). Horetski inquired about Plaintiff's symptoms, how high her fever was, and what medications she was taking.

25. Horetski told Plaintiff that it sounded like Plaintiff only had the flu and therefore should return to work. Plaintiff responded that she was specifically instructed

by Beaumont she needed to self-quarantine for at least 72 hours after her fever ended. Plaintiff stated that she believed she would be able to return on Monday.

26. After being fever free for at least 72 hours, Plaintiff returned to work the morning of Monday, March 23, 2020.

27. Upon arrival, Plaintiff found someone else working in her cubicle. Plaintiff was told the person was only performing clerical work.

28. After her arrival, there was a company-wide conference call. During the call, it was stated that business was "booming" and sales were up around 60%. The call continued that it was an "all hands on deck" situation and that if anyone has any extra time then they need to pitch in and help in other areas.

29. Shortly after this call, Plaintiff was instructed to meet Ayers in his office. At the meeting, Ayers notified Plaintiff she was being terminated immediately due to "uncertainty in the economy."

30. Plaintiff immediately mentioned the conference call and asked if she could be given something else to do. Ayers responded that "he could not answer that."

31. Plaintiff then went to visit HR Horetski to ask again why she was being terminated and if there was other work she could perform. HR Horeteski also responded that she could not answer that question.

32. Subsequently, Plaintiff received a Covid-19 antibody test which confirmed that she was previously positive with Covid-19.

33. Defendants never informed Plaintiff of any of her rights to leave pursuant to the FFCRA or the FMLA despite Defendants having adequate notice that Plaintiff potentially qualified for leave due to her symptoms. Instead, Defendants prodded Plaintiff to return to work despite the doctor's orders.

34. The evidence demonstrates that Defendant terminated Plaintiff for refusing to come into work while exhibiting symptoms of Covid-19 (and later testing positive).

## COUNT I
## VIOLATION OF THE FAMILY FIRST CORONA VIRUS RESPONSE ACT AND THE FAMILY MEDICAL LEAVE ACT - INTERFERENCE

35. All preceding paragraphs are incorporated by reference.

36. Congress enacted the FMLA finding that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4).

37. As a result of the Covid-19 pandemic, Congress expanded the FMLA through the FFCRA to cover Employers with under 50 employees for Covid-19 related purposes.

38. The FFCRA allowed for employees to utilize the protections of the FMLA if the employee requires leave for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

39. That to that end, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.

40. That at all times material hereto, Defendants were a covered employer as defined by the FMLA, the FFCRA, and the applicable federal regulations.

41. Plaintiff was an eligible employee under the definitional terms of the FMLA.

42. Plaintiff required leave for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

43. Defendants were aware Plaintiff required leave for these reasons.

44. Plaintiff provided Defendants adequate and timely notice of her need to take leave which qualified for the protection of the FFCRA/FMLA.

45. Defendants failed to inform Plaintiff of her right to take leave for Covid-19 and instead pressured her to return to work as soon as possible.

46. Defendants have interfered with and denied plaintiff her FFCRA/FMLA rights as described above and herein, including, but not limited to, failing to provide Plaintiff with leave protected by the FFCRA/FMLA to address her need for Covid-19 symptoms and testing and instead discharging Plaintiff from her position, in violation of the FMLA and FFCRA.

47. Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

48. Defendants' interference with Plaintiff's FMLA leave has directly and proximately caused Plaintiff great damages, including embarrassment, humiliation, outrage, mental distress and economic loss of large but as of yet undetermined proportions.

## COUNT II
## VIOLATION OF THE FAMILY FIRST CORONAVIRUS RESPONSE ACT AND FAMILY MEDICAL LEAVE ACT - RETALIATION

49. All preceding paragraphs are incorporated by reference.

50. Plaintiff had a conditioned which qualified for leave protected under the FFCRA/FMLA.

51. As recommended by the doctor, Plaintiff took leave to quarantine for 72 hours after exhibiting Covid-19 related symptoms.

52. Defendants retaliated against Plaintiff in violation of the FFCRA/FMLA leave by terminating her for taking leave which qualified as protected leave in violation of the FMLA and FFCRA.

53. Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

54. There is a causal connection between Plaintiff's protected activity and Defendants' retaliatory actions described above.

55. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT III
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

56. All preceding paragraphs are incorporated by reference.

57. On or about March 23, 2020 Defendants wrongly terminated Plaintiff in contravention of public policy.

58. Defendants terminated Plaintiff for following a medical professional's recommendation to self-quarantine and her refusal to return to work while under a medical professional's instructions to self-quarantine which would violate the FFCRA.

59. Plaintiff informed the employer that she was experiencing Covid-19 symptoms and was seeking a medical diagnosis.

60. Defendants discharged Plaintiff in illegal retaliation for exercising a right conferred by a well-established legislative enactment.

61. Plaintiff had a right to paid sick leave when exhibiting symptoms of COVID-19 and seeking medical attention to confirm the existence of the virus under the FFCRA.

Case 2:20-cv-11856-SJM-EAS  ECF No. 1  filed 07/08/20  PageID.12  Page 12 of 14

62. Defendants terminated Plaintiff because of her exercise of this right.

63. In order to return to work, Defendants would have required Plaintiff to violate the law.

64. Defendants' termination of Plaintiff in violation of public policy of the State of Michigan has damaged him by loss of earnings and earning capacity; loss of benefits and future benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Grant her all available compensatory damages for economic injury, including back and front pay, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, and any other damages available by law;

b. Grant her all available liquidated damages pursuant to the FFCRA and FMLA;

c. Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

d. Grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)

12

                                                        SCHULZ GOTHAM PLC
                                                        *Attorney for Plaintiff*
                                                        PO Box 44855
                                                        Detroit, MI 48244
                                                        (313) 246-3590

DATE: July 8, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**STEPHANIE SIMMONS,**

        Plaintiff,

vs.

**CARMELA FOODS, INC.,** and
**CARMELA FOODS DISTRIBUTION, INC.,**
Jointly and severally,

        Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## DEMAND FOR TRIAL BY JURY

Plaintiff Stephanie Simmons hereby demands for a trial by jury.

        Respectfully submitted,

        By: /s/ Jack W. Schulz
        Jack W. Schulz (P78078)
        SCHULZ GOTHAM PLC
        *Attorney for Plaintiff*
        PO Box 44855
        Detroit, MI 48244
        (313) 246-3590

DATE: July 8, 2020